## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAINCA BROWN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br> v.<br><br>THE CHICAGO HOTEL COLLECTION, LLC and EXPEDIA GROUP, INC.,<br><br>                    Defendants. | **Case No.**   1:25-cv-07810<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff DAINCA BROWN ("Plaintiff") brings this Class Action Complaint against Defendants THE CHICAGO HOTEL COLLECTION, LLC ("Chicago Hotel Collection" or "CHC") and EXPEDIA GROUP, INC. ("Expedia") (together, "Defendants") individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.     This is a civil action seeking declaratory relief, monetary damages, and restitution from Defendants arising from the unfair and unconscionable advertisement of low hotel room rates through third parties which are not honored upon arrival. Guests are instead assessed "hidden fees" or "junk fees" that are not disclosed until check-in, and which brings guests' total payment up to more than 250% of the total online quoted price. Plaintiff also seeks injunctive relief requiring (i) Defendants to advertise up-front to consumers the true total prices of hotel rooms to disclose any junk fees up front, including through third parties managed by Defendant Expedia Group, or

third parties displaying CHC's hotel reservation prices through the Expedia Partner Central ("EPC") platform and (ii) upon check-in, for Chicago Hotel Collection hotels to honor the prices quoted through its third-party advertising, and confirmed by payment of an initial deposit.

2.     Online hotel booking allows consumers to use their smartphones to use simple searches to display immediate price comparisons between dozens of nearby hotels. Google Maps Hotels Search is one such example, but other common internet search providers that come preinstalled on devices provide similar products.[1]

3.     Internet search providers such as Google Maps Hotel Search pull rates as posted and advertised on travel and booking sites such as Expedia, its affiliates, and partner online travel agencies, driving traffic to booking sites where guests can easily reserve hotel rooms.

4.     Hotel chains like Chicago Hotel Collection compete for customers by purportedly offering the lowest room rate. Hotels have an incentive to post rates online that are as low as possible to attract more potential customers.

5.     Chicago Hotel Collection uses an unlawful trade practice referred to as hidden "resort fees," "guest benefits fees," "drip pricing," or "junk fees," which are not disclosed until the guest has already arrived at the hotel and has expended time, money, and the opportunity cost selecting the hotel, and planning their stay based on the advertised rate that purports to include all fees and taxes.

6.     Specifically, Chicago Hotel Collection calls this hidden portion of the room rate a "Daily Guest Benefits Package" of $89.95 and a "Service Fee" of $40. In addition, rather than placing a "hold" on a guest's debit or credit card for "incidental charges," Defendant requires a

---

[1] *See* Google Maps, https://www.google.com/maps/search/hotels/ (last visited June 16, 2025) [https://perma.cc/4VZH-XMGE].

transfer of funds resulting in a deposit of $125 that it purportedly returns to the guest upon checkout if no incidental charges accrue.

7.      One key effect of this price deception is that consumers shopping for a hotel room are misled into believing a Chicago Hotel Collection room is significantly cheaper than the price they are ultimately charged. Defendants' motive in continuing this deceptive practice is profit. They have reaped hundreds of millions of dollars from such deceptive drip pricing and junk fees.

8.      In October 2018, Business Travel News reported that fees and surcharges at U.S. hotels were "expected to hit a record $2.93 billion."[2] At that time, among those fees, "resort fees are now common in major cities, averaging between $20 and $40," and "account for the largest share" of the increases in 2018. In 2025 such fees have now skyrocketed; in this case—to $139 per night.

9.      As early as November 2012, the Federal Trade Commission ("FTC") urged all hotels to include mandatory "fees" in the total advertised room price. The FTC found that consumers complained that they did not know they would have to pay resort or other hidden, mandatory fees in addition to the quoted hotel room rate to access their reservations.

10.     And in December 2015, Congress members expressed their concern that "resort fees allow hotels to mask the true price of a hotel room and reduce guests' ability to compare costs and fully budget for a family vacation or business trip," and stated that the practice should be banned under Section 5 of the Federal Trade Commission Act as an "unfair or deceptive [act] or practice."[3]

---

[2] See Julie Sickel, *US Hotel Fees and Surcharges Projected to Hit $2.93B in 2018*, Business Travel News (Oct. 24, 2018), https://www.businesstravelnews.com/Lodging/US-Hotel-Fees-and-Surcharges-Projected-to-Hit-2-93B-in-2018 [https://perma.cc/9M3L-TX9Z].

[3] Letter from Rep. Suzan DelBene et al. to Edith Ramirez, Chairwoman, Fed. Trade Comm'n (Dec. 11, 2015), https://delbene.house.gov/news/documentsingle.aspx?DocumentID=1536 [https://perma.cc/GC2H-8ACY].

11.     As of May 12, 2025, the FTC has been enforcing this rule under the FTC Rule on Unfair or Deceptive Fees.

12.     The Rule forbids hotels from advertising rates that do not reflect the true total cost to consumers, expressly targeting "junk fees," "resort fees," and "drip pricing" that are only revealed at the final stage of booking or upon arrival.[4] The FTC mandates that hotels must "tell people upfront the total price they will pay for short-term lodging," including all mandatory fees known and calculable at the time of advertisement.[5] Any advertised price must include all required charges, and the total price must be displayed more prominently than any other pricing information, except the final payment amount. Pricing information must be disclosed "clearly and conspicuously," ensuring consumers can easily notice and understand the full cost before starting the purchase process.[6]

13.     The Rule allows only three narrow exceptions from upfront price disclosure: taxes or other government charges, shipping charges, and charges for optional goods or services, all of which must still be clearly disclosed before payment is requested.[7] The FTC specifically prohibits adding mandatory "resort fees" or "service fees" at checkout or using vague terms like "convenience fees" without clear explanation, requiring that such fees be included in the total advertised price.[8]

---

[4] *See, e.g.*, *FTC Rule on Unfair or Deceptive Fees to Take Effect May 12, 2025*, Fed. Trade Comm'n (May 12, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/05/ftc-rule-unfair-or-deceptive-fees-take-effect-may-12-2025 [https://perma.cc/2DSJ-3SAQ].
[5] *See id.*
[6] *See id.*
[7] *See id.*
[8] *See id.*

14.     Defendants CHC and Expedia conspired to violate the FTC's Rule on Unfair or Deceptive Fees, effective May 12, 2025, by knowingly engaging in prohibited bait-and-switch pricing practices using the Expedia Partner Center hotel reservation listing platform.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), Plaintiff's claims and the claims of the other Members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class Members who are citizens of states other than Defendant's state of citizenship.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)–(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's and Class Members' claims occurred in this District and because Defendant transacts business and/or have agents within this District, and Defendant resides here.

## PARTIES

17.     Plaintiff Dainca Brown is a citizen of Minneapolis, Minnesota.

18.     Plaintiff Brown was unaware of Defendants' junk fees at the time she made her reservation and would not have reserved the room and made her deposit had she known junk fees would be assessed upon arrival. Plaintiff Brown would have pre-booked or placed a deposit on a different hotel had Defendants advertised the correct room rate and she were able to accurately compare prices.

19.     Defendant The Chicago Hotel Collection, LLC, an Illinois limited liability company based in Illinois, operates a portfolio of boutique hotels across Chicago of roughly 600–700 rooms.[9] CHC uses Defendant Expedia's Expedia Partner Center ("EPC") to advertise its hotel

---

[9] *See, e.g.*, The Chicago Hotel Collection, https://www.thechicagohotelcollection.com/ (last visited June 16, 2025) [https://perma.cc/EGV8-NMEX].

rates and solicit and gather guest reservations using the Online Travel Agencies' ("OTAs")
websites and hotel booking flows.

20.     Defendant Expedia Group, Inc. is a Delaware corporation with its principal place
of business in Seattle, Washington.[10] As of 2020, Expedia advertised approximately 26% of the
online hotel booking reservations across the United States through its vast network of partner
OTAs.[11]

### FACTS COMMON TO ALL CAUSES OF ACTION

***Defendants' Misleading Advertising Practices Concerning Mandatory Junk Fees***

21.     Chicago Hotel Collection uses the Expedia Partner Central ("EPC") platform to
publish and manage its rates to various third-party online travel agencies, many of which are owned
or operated by Expedia Group. Consumers easily find these third-party Online Travel Agencies
("OTAs") when they use their smartphone or other device to search for and seek to book a hotel
online. For example, the following information appeared for a Google Maps Hotel Search result
of quotes for a room reservation at Chicago Hotel Collection Magnificent Mile in June 2025:

---

[10] Expedia Group 2024 Annual Report,
https://s202.q4cdn.com/757635260/files/doc_financials/2024/ar/EXPE2024ARS-FILED.pdf (last visited
June 16, 2025) [https://perma.cc/T7UZ-BYFY].
[11] *See, e.g.*, *Expedia Market Share Analysis*, Osum Blog (Mar. 8, 2024), https://blog.osum.com/expedia-market-share/ (last visited June 16, 2025) [https://perma.cc/3N4J-D6C5].



22.     At this initial stage in the process of booking a reservation online, ***the quoted "most prominent" daily room rate is $74, which equates to only 22% of the total price*** a consumer will ultimately pay to obtain access to their CHCMM hotel room at check-in.

23.     If a consumer selects "More Prices from $74" and scrolls through rates offered by different third-party websites, they see more options as follows:[12]

| No. | Website | Advertised Price | Price Including Taxes + Fees |
|---|---|---|---|
| | *Featured Options* | | |
| 1 | Expedia.com | $153 | $179 with taxes + fees |
| 2 | Hotels.com | $153 | $179 with taxes + fees |

---

[12] *See* Google Maps Search Results for The Chicago Hotel Collection Magnificent Mile, https://www.google.com/maps/place/The+Chicago+Hotel+Collection+Magnificent+Mile+Hotel+%26+Suites/ [https://www.google.com/maps/place/The+Chicago+Hotel+Collection+Magnificent+Mile+Hotel+%26+Suites/@41.8960152,-87.6252675,17z/data=!4m9!3m8!1s0x880fd3fba337f47d:0x37ee921e0a0daa1c!5m2!4m1!1i2!8m2!3d41.8960152!4d-87.6226872!16s%2Fg%2F11sh4myt30?entry=ttu&g_ep=EgoyMDI1MDYxMS4wIKXMDSoASAFQAw%3D%3D] (last visited June 16, 2025) [https://perma.cc/5LHV-MRQF].

| No. | Website | Advertised Price | Price Including Taxes + Fees |
|---|---|---|---|
| 3 | The Chicago Hotel Collection Magnificent Mile Hotel & Suites | $177 $170 | Member rate, save 20% 175 with taxes +fees |
| 4 | Travelocity.com | $153 | $179 with taxes + fees |
| *All options* | | | |
| 1 | The Chicago Hotel Collection Magnificent Mile Hotel & Suites | $177 $170 | Member rate, save 20% $175 with taxes +fees |
| 2 | trivago DEALS | $74 | $99 with taxes + fees |
| 3 | traveluro | $74 | $99 with taxes + fees |
| 4 | Hotel Prive | $90 | $90 with taxes + fees |
| 5 | Splitty | $75 | $100 with taxes + fees |
| 6 | Holisto | $84 | $113 with taxes + fees |
| 7 | Super.com | $178 | $185 with taxes + fees |
| 8 | Priceline | $159 | $186 with taxes + fees |
| 9 | Trip.com | $101 | $107 with taxes + fees |
| 10 | Bluepillow.com | $108 | $108 with taxes + fees |
| 11 | Expedia.com | $153 | $179 with taxes + fees |
| 12 | Vio.com | $110 | $121 with taxes + fees |
| 13 | Prestigia.com | $195 | $202 with taxes + fees |
| 14 | HomeToGo | $169 | $169 with taxes + fees |
| 15 | Hotels.com | $153 | $179 with taxes + fees |
| 16 | goseek.com | $110 | $121 with taxes + fees |
| 17 | groupon.com | $173 | $173 with taxes + fees |
| 18 | Etrip.net | $110 | $121 with taxes + fees |
| 19 | PrimaStay | $172 | $177 with taxes + fees |
| 20 | Brek | $179 | $179 with taxes + fees |
| 21 | Agoda | $161 | $186 with taxes + fees |
| 22 | Despegar | $173 | $179 with taxes + fees |
| 23 | BusinessHotels.com | $179 | $185 with taxes + fees |
| 24 | LateRooms.com | $171 | $177 with taxes + fees |
| 25 | Stayforlong.com | $164 | $169 with taxes + fees |
| 26 | Orbitz.com | $153 | $179 with taxes + fees |
| 27 | Closest Hotel | $173 | $179 with taxes + fees |
| 28 | Reserving | $158 | $179 with taxes + fees |
| 29 | Travelocity.com | $153 | $179 with taxes + fees |
| 30 | Catchit.com | $174 | $174 with taxes + fees |
| 31 | Hotwire.com | $153 | $179 with taxes + fees |
| 32 | CheapTickets.com | $153 | $179 with taxes + fees |
| 33 | Musetrip | $174 | $177 with taxes + fees |
| 34 | ZenHotels.com | $175 | $175 with taxes + fees |
| 35 | eDreams | $153 | $179 with taxes + fees |
| 36 | Trivago.com | $179 | $179 with taxes + fees |

24.     Hotel booking websites wholly or partially owned by Expedia are highlighted above in pink, and on information and belief, Defendant CHC provided each of the above prices directly to these and other third-party OTA websites through Defendant Expedia's Expedia Partner Center platform (EPC).

25.     None of the prices CHC advertises extensively online through the EPC platform clearly and conspicuously state the mandatory junk fees guests must pay at check-in, and any disclosures of the junk fees CHC purports to make are insufficient.

***Plaintiff Brown's Experience***

26.     Plaintiff Brown used her smartphone's web browser search function to search for the lowest priced hotel rooms on her desired reservation date and in her desired location. After being presented with several options, she selected Chicago Hotel Collection Magnificent Mile Hotel & Suites ("CHCMM") because it was a low-cost option that met her budget.

27.     Plaintiff Brown made her CHCMM reservation through the third-party website Algotels[13] for a one-night stay on June 14, 2025, which check out scheduled for June 15, 2025.

28.     Defendant CHC uses Defendant Expedia's platform, Expedia Partner Central ("EPC"), a tool for hoteliers and short-term rental owners to manage their property listings across

---

[13] Expedia has ownership stake in Algotels (Expedia is a 60% owner of Trivago, which in turn is 30% owner of Holisto, the operator of Algotels.). While this fact is not necessary to allege the counts here, it helps explain Expedia's profit motive. Expedia uses EPC to promote its extensive network of "Online Travel Agencies" like Algotels, many of which are wholly or partially owned by it (flagged in the table in paragraph 23 with pink highlighting), which gives Expedia the appearance of separation from the false advertising. Expedia's OTA partners profit from the non-refundable reservation payments and Expedia profits from the hotels' listing agreements.

Expedia is named in this suit because it operates the Expedia Partner Center (EPC), which knowingly advertises false prices while giving violators like CHC the appearance of separation from such false advertising. Of note, CHC instructs its check-in staff members to suggest it has no relation with "third party-booking sites." CHC tells guests that those third parties "keep the reservation payment" and CHC does not receive that amount, even though most of CHC's revenue is derived through bookings made on EPC partner websites as opposed to direct CHC website bookings.

Expedia Group's online travel agencies ("OTAs"), including, e.g., Algotels. EPC is an online dashboard that allows hotels to managing bookings, adjusting nightly rates, update availability, and streamlining inventory management from a single online dashboard. [14]

29.     After clicking through the simple reservation process for CHCMM hosted by the Algotels website, Plaintiff Brown paid a nonrefundable deposit of $62 to reserve her room at CHCMM, with the promise that upon arrival, she would owe CHCMM an additional $66.63, for a total $128.63, including all taxes, fees, resort fees, and resort fees taxes, as shown in the image below:

---

[14] *See, e.g.*, Expedia Partner Central, https://www.expediapartnercentral.com/ (last visited June 18, 2025) [https://perma.cc/4R6R-7DCL].



6:46

Room 1      **2 Adults**

---

### Arrival details      <u>Send itinerary</u>

**Check-in**
From 4:00 PM

**Check-out**
Until 11:00 AM

**Special check-in instructions**
Minimum check-in age is 21

---

### Price summary      <u>Send receipt</u>

| | |
|---|---|
| 1 room x 1 night | $46.48 |
| Taxes and fees ⓘ | $15.52 |
| **Paid** | **$62.00** |
| Resort fee | $49.95 |
| Resort fee - tax | $16.68 |
| **Pay at the property** ⓘ | **$66.63** |

---

### Total      **$128.63**

Includes all taxes and fees — both paid now and at the property. This is the full amount you'll pay for your stay. Prices shown in USD.

COOKIE SETTINGS

30. Upon arrival to CHCMM on the Saturday evening of her stay, Plaintiff Brown was informed that her booking was made through a third party, which "had posted the wrong rate online." CHCMM refused to honor the rate quoted by Algotels even though Plaintiff had already paid her deposit and arrived at the hotel. Instead, CHCMM notified Plaintiff Brown to gain access to her reserved room, she would be required to pay $139.95 in junk fees, in addition to a refundable $125 deposit for "incidental" charges. When Plaintiff Brown stated that she wanted to opt out of the Service Fee and Daily Benefits Package Fee, and instead only wanted to pay the total price quoted to her by Algotels, which had caused her to pay the $62 deposit / reservation fee by offering an initial quote of $128.63, CHCMM stated she would have to "work it out with the third party if [she] want[ed] a refund."

31. When Plaintiff Brown contacted Algotels requesting its assistance in requiring CHCMM to honor the $128.63 price CHC, Expedia, and Algotels advertised online via the EPC, she was informed that her $62 deposit was non-refundable and non-transferable. Unless she was able to pay an additional amount of $264.95, she would be forced to forfeit her $62 deposit.

32. Because Plaintiff Brown was visiting Chicago and had nowhere else to stay, and found that other nearby hotels were fully occupied for last-minute reservations on a Saturday night, *CHC required that she pay a total of $326.95* to access her room, after CHCMM *initially quoted her a grand total of $128.63*, inclusive of all taxes and fees.[15] In other words, Plaintiff Brown was *asked to pay over 250% of the price she initially agreed to when she paid her deposit to reserve the room*, or else risk finding herself without a bed to sleep in that night.

33. Even excluding the refundable charge $125 for incidentals, Plaintiff Brown was asked to spend $201.95, $73.32 more than the total CHCMM originally quoted her, inclusive of

---

[15] Defendant CHC posted the false rate online by sharing such information to Algotels using Defendant Expedia's EPC platform.

all fees and costs—157% of the price she initially agreed to when she paid her deposit to reserve her room.

34.     Because Plaintiff Brown could not afford these additional hidden fees, she forfeited her deposit and found a last-minute booking at a different hotel. Algotels ultimately refused to refund her deposit without "written approval" from CHC, despite initially agreeing to refund the amount.

***The Expedia Partner Center ("EPC")***

35.     Consumers like Plaintiff Brown frequently use the internet to make hotel reservations, view and filter rooms offered by hotels at the same time, and compare their prices, which the hotels advertise using a daily room rate and advertise rates inclusive of all taxes and fees.

36.     Most of CHC's booking revenue is derived from guests that book their stay via third-party OTAs like Algotels, which feature prominently in common hotel search engines, not its direct CHC website bookings accessed through its https://bookings.travelclick.com/ URLs accessible via prominent "Book" or "RESERVE" links at https://www.thechicagohotelcollection.com/.

37.     CHC's reservation funnel that pushes most of its guests to third-party sites is not by accident; it is by design. CHC uses the Expedia Partner Center or EPC platform, an online dashboard, used to list and manage its hotels, field bookings, collect reviews, adjust rates, and market, on Expedia Group's brands and channels: EPC's extensive network of Online Travel Agencies (OTAs), including Algotels.[16]

---

[16] *What is Partner Central?*, Expedia Partner Central FAQ, https://support.localexpertpartnercentral.com/index.php/new-to-expedia/ (last visited June 18, 2025) [https://perma.cc/6T9A-CAG4]; *Mandatory Fees*, Expedia Partner Central FAQ, https://support.localexpertpartnercentral.com/index.php/new-to-expedia/ (last visited June 18, 2025)

38.     Many of these OTAs advertise rates at CHC hotels that are far below their true prices, pushing such third parties' advertisements of CHC hotel reservations to the top of search results using "lowest price" filters, driving higher guest traffic, particularly from budget-conscious guests.

39.     Expedia purports to require CHC to disclose to third parties on the EPC platform its mandatory junk fees like CHC's Service Fee and Daily Guest Benefits Fee.[17] "Expedia require[s] these fees to be loaded in the mandatory fees section[ because, i]n addition to ensuring compliance with pricing display laws, Its important that travelers understand the full cost of booking [] (including both taxes and fees payable at the time of booking and those payable at the activity) so they can make informed decisions on whether to book[.]"[18]

40.     Expedia states that the EPC platform puts hoteliers like CHC "in control of the creation, management, and promotion of its hotel reservations from start to finish" and "to book one of your products on an Expedia Group site, travelers will need to know the rate of your product. [] For every Option you list on Expedia Group's sites, you must create at least one Price Group. The Price Group you create will include travel dates, ticket types, and availability."[19]

41.     Expedia further advises hoteliers, when using the EPC platform, "[t]o ensure price transparency for travelers, ***any mandatory fees or taxes that travelers are required to pay post-booking (ie: any fees payable on arrival at the activity) must be loaded in these designated fields***."[20] Expedia warns that "***if fees are not loaded by May 31[, y]our activity will be at risk of being removed from the Expedia marketplace***."[21]

---

[https://perma.cc/ZFX2-G5JJ].
[17] *Mandatory Fees*, Expedia Partner Central FAQ, *supra* note 16.
[18] *Id.*
[19] *What is Partner Central?*, Expedia Partner Central FAQ, *supra* note 16.
[20] *Mandatory Fees*, Expedia Partner Central FAQ, *supra* note 16.
[21] *Id.*

42.     Both Defendants understand that, despite this vague threat of removal, Expedia will not remove CHC from the EPC platform because CHC is a significant driver of revenue for Expedia.

43.     For example, CHC's customer service representatives report to guests at check-in that CHC does not ever receive the third-party reservation fee from its EPC partner websites. If this is true, it explains Expedia's profit motive for continuing to allow CHC to falsely advertise through its platform. Expedia keeps the online reservation fee and CHC can keep its hotels at full capacity as one hand washes the other.

44.     CHC's practice is to use EPC to cause OTAs to initially advertise a CHC room rate that does not include its "Daily Guest Benefits Package Fee" and "Service Fee" or its mandatory incidental deposit. CHC only disclose such charges in the final amount a consumer is required to pay at check-in when they arrive to the hotel.

45.     CHC charges these mandatory junk fees to increase its revenues without appearing to raise the room rate at its hotels and does not include such fees in the room rate because doing so would effectively increase the price of a hotel room and thereby make its hotels appear less competitive when compared with other hotel prices online.

46.     Guests like Plaintiff Brown are pressured into paying the exorbitant mandatory junk fees and are at the same time made to feel ashamed that they have effectively been scammed or duped by a third party that has kept their reservation fee.

47.     In fact, third parties like Algotels advertise prices on information provided and controlled by CHC via the EPC dashboard.

48.     Expedia's EPC is also a significant driver of revenue for CHC because it baits budget-conscious guests to reserve a room hotel before it switches the price at arrival.

49.     In summation: via the Expedia Partner Center platform, CHC publishes the rates the OTA must advertise under EPC rules. Expedia requires all mandatory fees, like the service fee and daily resort fee to be disclosed and included by CHC when it posts its rates to the EPC platform. On information and belief, CHC fails to disclose mandatory junk fees like the $40 Service Fee and the $99.95 Daily Benefits Package Fee to third parties when it shares its rates for use by third parties like Algotels, or otherwise purposely manipulates its use of the EPC platform such that OTAs like Algotels do not include its mandatory junk fees in their quoted price. CHC is well aware that OTAs like Algotels advertise false and extremely low prices for a room booking at CHC hotels. Because these bookings drive traffic and revenue, CHC fails to notify such third parties that their prices are false. In fact, a significant amount of CHC's revenue is derived from such mandatory junk fees.

50.     As such, using the EPC platform, CHC is purposely and systemically advertising that reservations at its hotels cost a fraction of what guest will pay before entering their rooms.

51.     Expedia knows that CHC abuses the EPC platform to cause third party OTAs to publish artificially low and false prices because CHC frequently redirects guests upset with the junk fees to seek recourse from the third party—Expedia or one of its partner OTAs.

52.     When guests contact Expedia or its OTA partners about being overcharged, they are directed to a series of self-help articles and then are told to wait for a human representative for two hours. Rather than wait two hours for human assistance from Expedia, most guests acquiesce and pay the hotel its mandatory junk fees so they may enter their rooms and continue with their stay.

53.     Therefore, Defendant Expedia and Defendant CHC conspire to use the Expedia Partner Central platform to illegally advertise daily room rates online that exclude mandatory junk fees only disclosed and assessed upon guest check-in.

***Defendants Violate the FTC Rule on Unfair or Deceptive Fees to Unlawfully Drive Profits***

54.     CHC's practice—using the EPC to direct third party OTAs like Algotels to advertise only part of a room rate and then later revealing other "fees" as the consumer arrives at the hotel and completes the buying process—is labeled "drip pricing" by the Federal Trade Commission ("FTC"). As early as November 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees may violate federal consumer protection law by misrepresenting the price consumers can expect to pay for their hotel rooms.[22] The FTC specifically warned the hotels that the "most prominent figure … should be the total inclusive estimate," which "include[s] … any unavoidable and mandatary fees, such as resort fees," and should be provided to the consumer up front, not later in the checkout process.[23]

55.     The FTC's Bureau of Economics then issued a report in 2017 confirming its concerns about this practice of drip pricing. That report concluded:

> In sum, the literature suggests that separating mandatory resort fees from posted room rates without first disclosing the total price is likely to harm consumers by artificially increasing the search costs and the cognitive costs of finding and booking hotel accommodations. Unless the total price is disclosed up front, separating resort fees from the room rate is unlikely to result in benefits that offset the likely harm to consumers.[24]

---

[22] Fed. Trade Comm'n, *Warning Letters to Hotel Operators Regarding Price Quotes That Exclude Resort Fees* (Nov. 29, 2012), https://www.ftc.gov/news-events/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other [https://perma.cc/74NT-NVJ5]; Fed. Trade Comm'n, *Economic Analysis of Hotel Resort Fees* (2017), https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf [https://perma.cc/3Z2B-GG7H].
[23] *Id.*
[24] *Id.*

56.     Notwithstanding years of warnings from the FTC embodied in its current Rule on Unfair or Deceptive Fees, effective May 12, 2025, the Defendants continue to advertise room prices that do not include mandatory junk fees. Defendants continued this deceptive practice because it has become a key profit center for both companies.

57.     By charging consumers resort fees in addition to the advertised daily room rate, Defendant CHC makes vast amounts of increased revenue without appearing to increase the price for which it initially offers its rooms. CHC's unlawful trade practice has affected consumers in this District, in Illinois, and throughout the United States.

58.     In addition, Defendant Expedia swindles consumers out of hundreds of millions of dollars while apparently providing a deeply devalued service. Specifically, the prices quoted on Expedia's partner websites are labeled "incorrect" by CHC in its communications with guests when they dispute the mandatory junk fees. In fact, CHC regularly tells guests that Expedia and its partner OTAs keep the reservation payment for their own profit, implying that guests have effectively paid the third party to simply place a hold on the room reservation, and have not made any actual payment towards the cost of their hotel room reservation. Expedia's unlawful trade practice has affected consumers in this District, in Illinois, and throughout the United States.

59.     This claim by CHC that it receives no portion of the reservation payment collected by the third party OTA is suspect because for its part, Expedia states that "[a]ll suppliers are on an automatic payment system called Expedia Auto-Pay, which means we will automatically send you payment without the need to invoice Expedia." This fact would tend to suggest that Expedia only keeps a portion of fees collected through EPC. However, "commission rate[s] were pre-set based on contract terms with [CHC's] Account Manager," which could conceivably include a commission of 100% of the reservation rate.

60.     Either CHC lies to consumers that it does not receive any portion of their reservation fee from the third party to further convince them that its mandatory junk fees are legal and proper, or Expedia knowingly allows OTAs to collect 100% of the reservation payment in exchange for the benefit of filling CHC's rooms, knowing that CHC can afford to pass on the reservation payment because it will cover the difference through mandatory junk fees. Either way, Defendants unlawful trade practices have affected consumers in this District, in Illinois, and throughout the United States.

## CLASS REPRESENTATIONS

61.     Plaintiff Brown brings this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of all individuals in the United States who paid a deposit online and were later billed undisclosed, mandatory junk fees at Chicago Hotel Collection properties upon arrival (each a "Class Member" and collectively, the "Class") during the applicable statute of limitations period. Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all individuals who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

62.     Plaintiff reserves the right to later seek certification of alternative classes or subclasses, as appropriate after discovery and further investigation.

63.     Plaintiff is a Member of the Class.

64.     The Members of the Class are so numerous that joinder is impractical. The Class consists of thousands of Members, the identity of whom is within the knowledge of and can be ascertained only by accessing CHC's records. A database of customers is maintained by CHC and includes customer names, contact information, date of stay, and charges paid. Thus, records are

readily available to identify all Members of the Class, provide notice of the instant class action to all Class Members, and determine the nature and size of each Member's claim.

65.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, was charged junk fees by Chicago Hotel Collection. The representative Plaintiff, like all putative Class Members, has been damaged by Chicago Hotel Collection's misconduct in that she has been assessed and/or will continue to be assessed unlawful junk fees. Furthermore, the factual basis of Chicago Hotel Collection's misconduct is common to all Class Members and represents a common thread of unfair and unconscionable conduct resulting in injury to all Members of the Class.

66.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single action simultaneously, efficiently, and without duplication of the expenses that numerous individual actions would entail. No difficulties are likely to arise in the management of this class action that will preclude its purpose as a class action, and no superior alternatives exist for the fair and efficient adjunction of this controversy. Without a class action, Defendant will likely retain the benefit of their wrongdoing and may continue the course of their actions, which could result in further damages.

67.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

68.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### *Violation of Illinois Consumer Fraud Act*

69.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the Members of the Class against Defendants.

71.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate that purpose.

72.     Defendants intended that Plaintiff and Class Members would rely upon its deceptive and misleading conduct in charging the junk fees discussed herein, and a reasonable person would in fact be misled by this deceptive conduct.

73.     In addition, on information and belief, Defendant CHC refers to its $125 incidentals charge as a "deposit" when it is in fact a temporary fee that will later be refunded. Such reference misrepresents the nature of the transaction.

74.     Defendant Expedia is jointly liable for the deceptive scheme because it knows that guests will face additional charges upon arrival at the hotel but fails to disclose this in its booking process.

75.     Defendants' surprise junk fees have a disproportionate impact on lower-income consumers who have less flexibility to shop around or absorb unexpected costs. Defendants' scheme exploits this inflexibility by imposing charges that are manageable for affluent guests that can afford to write them off as an inconvenience but create significant hardship for budget-conscious travelers.

76.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each Class Member sustained damages in an amount to be proven at trial.

77.     In addition, based at least on its knowing, disproportionate impact on lower-income consumers, Defendant's conduct showed malice, motive, and the reckless disregard of the truth, such that an award of punitive damages is appropriate.

## **COUNT II**
### *Unjust Enrichment*

78.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of the Members of the proposed Class against Defendants.

80.     Plaintiff and the other Members of the Class conferred benefits on Defendant CHC by paying undisclosed junk fees, and on Defendant Expedia by paying reservation or deposit fees,

which provided no added value to Plaintiff other than locking them into being forced to pay additional junk fees to Defendant CHC or forfeit such deposit.

81. In addition, on information and belief, Defendant CHC receives interest-free loans from guests' mandatory $125 incidental deposits, causing it to be unjustly enriched at the Class Member's expense, especially when deposits are held for extended periods.

82. Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff's and Class Members' payment of junk fees. Retention of the monies under these circumstances is unjust and inequitable because Defendant's junk fees are misleading to consumers.

83. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff and the other Class Members respectfully request that the Court:

a) Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b) Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

c) Award Plaintiff and the Class their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

d) Grant restitution to Plaintiff and the Class and/or require Defendants to disgorge its ill-gotten gains;

e)      Permanently enjoin Defendants from engaging in the unlawful conduct set forth herein; and

f)      Grant any and all such other relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: July 10, 2025               Respectfully submitted,

*/s/  Gary E. Mason*
Gary E. Mason
Danielle L. Perry
Theodore B. Bell
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: gmason@masonllp.com
Email: dperry@masonllp.com
Email: tbell@masonllp.com

*Attorneys for Plaintiff and the Proposed Class*